## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **United States of America** | : | |
| | : | |
| **v.** | : | **No. 3:17-cr-55-4 (VLB)** |
| | : | |
| **Jonathan Brown** | : | |
| | : | **November 29, 2022** |
| | : | |

## <u>OMNIBUS ORDER AND DECISION ON PRE-TRIAL MOTIONS</u>

On March 1, 2017, the Government filed a criminal complaint against Jonathan Brown, the Defendant, alleging that he and six other co-defendants engaged in a conspiracy to distribute and possess with intent to distribute heroin. [Dkt. 1]. The Defendant was arrested on March 3, 2017 and detained until his initial presentment the next business day, March 6, 2017. [Dkts. 3, 5]. The Defendant was ordered to be detained at the initial presentment. [Dkt. 8]. Shortly thereafter, the Defendant was released on bond on June 1, 2017. [Dkt. 74, 77].

As detailed fully in the Court's decision on the Defendant's motion to suppress, the Defendant proffered with the Government on five occasions, on March 6, March 23, December 11, December 20, 2017, and February 5, 2018. [Dkt. 599 (Dec. on Mot. to Suppress)]. On March 5, 2018, the Defendant failed to appear for a scheduled court appearance. [*Id.*, 5]. The Court issued an arrest warrant for the Defendant. [*Id.*]. Eighteen months later, law enforcement located the Defendant and brought him to the district, where the Court ordered his detention pending trial. [Dkts. 449, 456, 457].

1

After several years and many pretrial motions, this case is scheduled to proceed to trial. Jury selection took place on November 18, 2022, and evidence is scheduled to begin December 1, 2022. This decision addresses all outstanding pre-trial motions as of the date of this decision. [Dkts. 666, 670, 671, 672, 673, 675-3, 736, 763, 770, 838, 849, 854].

I.     <u>Admission of Other Crimes and Bad Act Evidence [Dkts. 666, 675-3, 854]</u>

The Defendant moves to preclude admission of other crimes and bad acts, [dkts. 666,[1] 854], and the Government has simultaneously moved to admit the same, [dkt. 675-3]. The following background is necessary for adjudicating these motions.[2] On February 5, 2018, counsel for the Government and law enforcement interview the Defendant at the United States Attorney's Office, in the presence of his counsel, and under the terms of a federal proffer agreement. [Dkt. 675-3, 1]. During the proffer session, the Defendant discussed his knowledge of a drug-related murder ordered by Ivan Rosario, who is the leader of the charged drug conspiracy that allegedly included the Defendant. [*Id.*, 1–2]. The Defendant stated during the proffer sessions that Rosario ordered the killing because Rosario felt the victim threatened the conspiracy. [*Id.*, 2]. In addition, the Defendant stated during the proffer sessions that he knew the people who were paid for the killing and the amount paid. [*Id.*]. The Defendant also stated that he destroyed the firearm used in connection with this killing as directed by Rosario. [*Id.*]. Further, the

---

[1] Many of the Defendant's motions in limine were brought by his then-counsel, who has since been replaced. New counsel has filed a motion to adopt these pre-trial motions. [Dkt. 849]. The Court grants the motion to adopt.

[2] The Court assumes the truth of these allegations simply for the purpose of adjudicating the outstanding motions.

Defendant stated that Rosario conveyed a desire to arrange for the killing of another person, which the Defendant advised Rosario against for the purpose of avoiding unwanted attention from law enforcement.  [*Id.*, 3].

The Defendant seeks an order precluding the Government from offering evidence of the other crimes and bad acts discussed above.  [Dkts. 666, 854].  The Defendant argues this evidence constitutes propensity evidence, which would confuse the jury and call for speculation, because the acts are not connected to the criminal conduct provided for in the indictment.  [Dkt. 666-1, 2].  In addition, the Defendant argues the probative value of such evidence is outweighed by its potential and unfair prejudice, the evidence is irrelevant, the evidence is not needed for the Government to prove the case as the issue for which the Government may offer the evidence is undisputed, and there is insufficient evidence that the Defendant committed or was connected with the schemes.  [*Id.*, 2–3].

The Government has moved to admit evidence of violence taken in furtherance of the charged drug conspiracy, which includes the above other crimes and bad acts.  [Dkt. 675-3].  Recognizing that the evidence at issue can be prejudicial, the Government argues this evidence should be admitted as it is intrinsic to the charged drug conspiracy.  [*Id.*, 6].

Under the Federal Rules of Evidence, evidence is only admissible if it is relevant.  Fed. R. Evid. 402.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  "The court may

3

exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  As such, evidence of an extrinsic crime cannot be introduced as character evidence to prove that an individual acted in any certain way on a specific occasion.

There is an exception in a criminal setting, where such evidence may be admissible for "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  If the evidence is admissible under a 404(b)(2) exception, the prosecutor must provide "reasonable notice of the general nature of any such evidence that the prosecutor intends to offer; and do so before trial." *Id.*

It is well established in the Second Circuit that:

evidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it [1] arose out of the same transaction or series of transactions as the charged offense, [2] if it is inextricably intertwined with the evidence regarding the charged offense, or [3] if it is necessary to complete the story of the crime on trial.'

*United States v. Nektalov*, 325 F. Supp. 2d 367, 370 (S.D.N.Y. 2004) (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)).  The Second Circuit also recognizes that evidence of participation in violence may be intrinsic evidence to a conspiracy to distribute narcotics.  *United States v. Santos*, 541 F.3d 63, 72 (2d

Cir. 2008) ("Because narcotics conspiracies are illicit ventures, disputes are frequently settled by force or the threat of force.").

> Where . . . the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself. . . . Moreover, . . . it is within the [trial] court's discretion to admit evidence of prior acts to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators.

*United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999) (internal citations and quotation marks omitted).

Here, the Court must first determine whether the evidence of other crimes and bad acts as described above is relevant under Rules 401 and 402. The Court finds this evidence is relevant to establishing the existence, the scope, and the Defendant's role within the conspiracy. The evidence of violence goes to several elements of the charged conspiracy, including the existence of the conspiracy, the Defendant's knowledge of the conspiracy, and the Defendant's willingness to overtly act in furtherance of the conspiracy. *See Santos*, 541 F.3d at 70 (listing elements of conspiracy). Specifically, as presently alleged, the Defendant's knowledge and involvement in the murder-for-hire scheme tends to prove the existence and the Defendant's knowledge of the conspiracy, because Rosario explained to the Defendant the purpose of the killing was to protect the conspiracy from detection by law enforcement. In addition, the evidence tends to show the Defendant's willingness to overtly act in furtherance of the conspiracy by destroying the physical evidence (the firearm) used in the killing. This evidence

also tends to prove the close relationship and mutual trust the Defendant had with Rosario, who again is the head of the charged conspiracy.

Next, the Court must determine whether the evidence of violence should be precluded under Rule 403, as argued by the Defendant.  The Court finds that the probative value is not substantially outweighed by the potential prejudice, and thus this evidence is not subject to preclusion under Rule 403.  For the reasons listed above, the evidence is significantly probative to the elements of the charged conspiracy as it goes directly to the Defendant's knowledge of the conspiracy, its scope, and his willingness to join the conspiracy by engaging in overt acts in furtherance thereof.  *See Diaz*, 176 F.3d at 79–80 (affirming decision to admit prior bad acts evidence in a drug conspiracy case where the evidence informed the jury of how the drug conspiracy evolved and how the illegal relationship and mutual trust developed between coconspirators).  This evidence is certainly prejudicial, as conceded by the Government in their briefing on this issue.  However, the Court cannot find that the prejudicial effect is substantially outweighed by the probative value considering how probative this evidence is.  In order to mitigate the prejudicial effect, the Court will issue a limiting instruction similar to that in *United States v. Torres*, 901 F.2d 205, 235–36 (2d Cir. 1990), which will remind the jury of the permissible bases upon which they may rely on this evidence.

Further, the Court finds that the evidence at issue is not subject to Rule 404(b) because it is intrinsic to the charged offense, as detailed above.  The other crime and bad act evidence is directly intertwined with the evidence regarding the

6

charged offense and arises from the same series of transactions as the charged offense.

The Defendant argues: "The issue for which the U.S. Attorney may offer evidence of such other crimes or misconduct is not disputed, and therefore such evidence must be excluded."  [Dkt. 666-1, 3].  The Defendant provides no detail as to what he means when he says the issue "is not disputed."  The Defendant merely cites to two cases: *United States v. Goodwin*, 492 F.2d 1141, 1152 (5th Cir. 1974)[3] and "*United States v. Ring*, 513 F.2d 478, 483 (2d Cir. 1970)."  In *Goodwin*, the other-crime evidence related to an entirely separate crime of transporting large amounts of illegal substances nine months after the charged conduct, which had no connection in time or fact to the charged conspiracy.  492 F.2d at 1152.  The Fifth Circuit found error with the admission of this evidence because the only purpose the Government sought to introduce this evidence for was to establish intent, which was never seriously in dispute.  *Id.*  The Court is unable to locate the second case cited by the Defendant because the citation provided is incorrect.  Regardless, the Court cannot address the Defendant's argument because he does not provide any detail on what is not in dispute, nor does he provide any legal authority or argument supporting his position.  To the extent that the Defendant is conceding his association with the drug conspiracy, this fact alone is not a basis for precluding admission of the other crimes and bad act evidence.  *See Diaz*, 176 F.3d

---

[3] *Goodwin* was tried and decided before the enactment of the Federal Rules of Evidence.  *Compare Goodwin*, 492 F.2d at 1144 (case tried on January 23 and 24, 1973) *with* An Act to Establish Rules of Evidence for Certain Courts and Proceedings, Pub. L. 93-595, 88 Stat.  1949 (1975) (the Federal Rules of Evidence were enacted on January 2, 1975).

at 80 (rejecting the defendant's argument that the prior bad acts evidence was unduly prejudicial where the defendant conceded his association with the drug conspiracy, because there were still disputes as to the existence, nature and operations of the conspiracy). As in *Diaz*, this evidence is relevant and probative to the existence, nature, and operations of the conspiracy. *Id.*

Lastly, the Court rejects the Defendant's argument there is insufficient evidence of the Defendant's involvement in the prior crimes and bad acts. In support of this argument, the Defendant merely cites to three out-of-circuit cases decided over forty years ago, without any legal or factual argument justifying reliance on these cases. [Dkt. 666-1, 3]. The Defendant first cites to *Dillon v. United States*, 391 F.2d 433, 438–39 (10th Cir.), *cert. denied*, 393 U.S. 889 (1968), where the Tenth Circuit found error with admission of testimony about a defendant's prior convictions that were attenuated in time to the underlying charges—having occurred seventeen years prior—and the defendant did not open the door to this evidence. The Defendant next cites to *United States v. Clemmons*, 503 F.2d 486, 488 (8th Cir. 1974), where the Eighth Circuit found error in the admission of testimony about an arrest that occurred two months after the charged offense that did not result in any formal charges and did not involve the underlying conspiracy. Lastly, the Defendant cites to *Gast v. United States*, 294 F.2d 66 (8th Cir. 1976), which the Court has been unable to locate as the citation is incorrect. The facts of *Dillon* and *Clemmons* are distinguishable, as the other crime evidence introduced in those cases were entirely unrelated in time and fact to the charged offense. Here, the evidence of the other crimes and bad acts is related in time and fact.

Specifically, the evidence is related in time as it is alleged to have occurred during the course of the charged conspiracy.  In addition, the evidence is related in fact to the charged conspiracy because, according to the Defendant's claimed admissions, the violence was taken to protect the conspiracy by concealing it from law enforcement.

Therefore, the Court denies the Defendant's motions to preclude admission of the other crimes and bad acts evidence, [dkts. 666, 854], and grants the Government's motion to admit, [dkt. 675-3].

## II.   Intent to Preview Proffer Admissions in Opening Statements [Dkt. 736]

The Government filed a motion and notice of intent to preview content of the Defendant's proffer admissions during its opening statements.  [Dkt. 736].

Opening statements provide "an adequate vehicle for the government to 'help' the jury gain an overview of anticipated evidence as well as a preview of its theory of [the] defendant's culpability."  *United States v. Garcia*, 413 F.3d 201, 214 (2d Cir. 2005).  "Such an overview present[s] no risk of prejudice [where] the jury [is] specifically instructed that the opening statements of counsel 'are not evidence.'"  *Id.* at 215.  In *Perry v. City of New York*, 552 F. Supp. 3d 433, 445 (S.D.N.Y. 2021), the district court rejected a post-trial argument that the prosecutor improperly introduced evidence in her opening statements where she published exhibits not yet admitted into the trial record.  The district court explained the opening statements were not improper in light of the wide discretion afforded to parties in their opening statements, the court's pre-statement instruction that

opening statements of counsel is not evidence, and the evidence was ultimately admitted during trial. *Id.*

The Government argues the proffer admissions are an integral part of the Government's trial evidence, and they should be permitted to preview that evidence to the jury as long as the statements are prefaced with limiting instructions. [*Id.*]. In addition, the Government notes that the challenges to the admission of this information have been sufficiently raised pretrial on the Defendant's motion to suppress, which was denied. [*Id.*]. Lastly, the Government argues a lack of anticipated impediments to the introduction of this evidence because they have four competent trial witnesses with personal knowledge that can authenticate and attest to the veracity of their content. [*Id.*].

The Defendant filed a pro se objection, wherein he generally claims that the statements made during the proffer session should be inadmissible as they are unreliable. [Dkt. 744]. Specifically, the Defendant argues the statements made during the first proffer session were the product of coercion and were not voluntary statements. [*Id.*]. The Defendant claims that the first proffer session was coercive because he was held in solitary confinement for 72 hours beforehand, where he had limited access to proper food and sleep. [*Id.*]. In addition, he claims he was interrogated for three to six hours in a small dark room, where a law enforcement agent and the prosecutor were aggressive and threatened to arrest the Defendant's wife if he did not cooperate. [*Id.*]. Lastly, the Defendant generally claims that his counsel's advice to cooperate was ineffective and may be the product of a

conspiracy with the prosecutor, who he claims spoke with his attorney before he did.  [*Id.*].

The issues raised by the Defendant in his objection were raised and adjudicated in the motion the suppress decision.  [Dkt. 599].  The Court rejected the Defendant's arguments of coercion after he failed to present any evidence supporting his claim and the evidence presented established the Defendant made his proffer admissions knowingly, intelligently, and voluntarily.  This is the law of the case from which the Court may not defer.[4]

In addition, the Defendant's narrative suffers from logical factual flaws. Counsel for the Defendant was present with him at all of the proffer sessions.  The Court previously found then-defense counsel's advice prior to the proffer sessions was not defective.  [Dkt. 599]. Now, the Defendant only challenges the information provided during the first proffer session and makes no reference to the other four times he proffered, all of which occurred well after the Defendant was confined and after the Defendant had time to reflect.  Without going into great detail on the Defendant's statements reported to have been made during the proffer sessions, the Court's review of the reports show that the bulk of the relevant and probative admissions occurred in the later proffer sessions.  [Proffer Reports, Dkt. 693].

---

[4] The law-of-the-case doctrine provides "when a court has ruled on an issue, 'that decision should generally be adhered to by that court in subsequent stages in the same case." *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009).  There are circumstances where reconsideration may be justified.  *Id.* ("A court's reconsideration of its own earlier decision in a case may, however, be justified in compelling circumstances, consisting principally of (1) an intervening change in controlling law, (2) new evidence, or (3) the need to correct a clear error of law or to prevent manifest injustice.").  No such circumstances have been raised, argued, or could be reasonably interpreted from the pleadings before the Court.

The Defendant will be given an opportunity to challenge the weight of this evidence at trial, but he has presented no factual or legal basis to justify denying the Government's motion to preview. Therefore, the Court grants the Government's motion to preview the proffer admissions during their opening statements.

### III.   Admission of Proffer Reports [Dkts. 672, 675-4]

The Defendant seeks an order precluding the Government from offering the proffer reports as documentary evidence. [Dkt. 672]. The Government originally filed a motion to admit these proffer reports, as well as witness testimony on the proffer sessions. [Dkt. 675-4]. However, the Government now reports that, while it intends to elicit testimony during its case-in-chief concerning the defendant's statements during the proffer sessions, it no longer seeks to introduce the proffer reports themselves. [JTM, 10]. Therefore, the Court finds the Defendant's motion to preclude admission of the proffer reports, [dkt. 672], is moot and the Government's motion to admit, [dkt. 675-4], is withdrawn.

### IV.   Admission of Prior Criminal Charges and Convictions [Dkt. 666]

The Defendant seeks an order precluding the Government from offering evidence during its case-in-chief of any prior charges and convictions. [Dkt. 666-1, 1]. The Government indicates that it does not intend to introduce the Defendants prior drug convictions in its case-in-chief. [Dkt. 857, 2]. Therefore, the Court finds the Defendant's motion to preclude admission of prior criminal charges and convictions, [dkt. 666], is moot as the Government does not intend to introduce such evidence in its case-in-chief.

### V.   Production of Agent's Notes, Co-Conspirator Statements [Dkts. 670, 671].

The Defendant seeks an order for the Government to produce any agents' notes on any proffer session or statements made involving the Defendant or any potential witness who will testify at trial pertain to him.  [Dkt. 670].  The Defendant claims that he requested this documentation at least as early as October 2021 and had not yet received a reply.  [*Id.*].  In addition, the Defendant seeks an order for the Government to produce all statements, oral or written, of any purported co-conspirator the Government intends to introduce at trial under Rule 801(d)(2)(E) of the Federal Rules of Evidence.  [Dkt. 671].

The Government replies that it believes all documents in these categories have been provided but will make efforts to produce the requested documents to the extent they have not yet been provided.  [Dkt. 853, 6–7].  The Defendant provides no indication that he has not received the sought-after notes following the Government's response.  Without any evidence to the contrary, the Court has no reason to believe the Government has not provided the records the Defendant seeks.

Therefore, the Court finds that the Defendant's motions to produce agents' notes and co-conspirator statements, [dkts. 670, 671], are moot.

### VI.   Prophylactic Motions [Dkt. 854]

The Defendant filed a motion in limine seeking to preclude co-conspirator statements offered pursuant to Rule 801(D)(2)(E) of the Federal Rules of Evidence. [Dkt. 854].  The Defendant argues he objects to any and all proffered coconspirator statements unless and until the Government can establish to the Court's

13

satisfaction that the charged conspiracies exist, that the Defendant was a member of that particular conspiracy at the time the statements were made, and that the other requirements of Rule 801(d)(2)(E) have been satisfied.   [*Id.*, 3–5].   The Defendant also seeks to exclude or limit potential testimony of non-expert law enforcement agents who may testify to their interpretation of the meaning of certain recorded conversations or the structure of drug conspiracies generally. [*Id.*, 5–6].   Lastly, the Defendant seeks permission to make arguments about limiting the consciousness of guilt evidence if and when evidence comes into trial that warrant reconsideration of the Court's prior decision permitting such evidence.   [*Id.*, 6].   The Defendant provides no factual or legal basis upon which the Court can adjudicate these issues prior to trial.   The Court takes these issues under advisement, and the Defendant may raise these motions again if and when a sufficient factual basis for the motion is before the Court.   Therefore, the Court denies the prophylactic motions, [dkt. 854], without prejudice.

## VII.   Legal Issues Relating to Section 3146 Charge [Dkt. 673, 763]

The Government originally pursued a charge against the Defendant for failure to appear in violation of section 3146 of Title 18 of the United Sates Code. [*USA v. Brown*, 20-cr-191, Indictment, Dkt. 1].   The Court dismissed this charge following the Government's motion.   [Dkts. 46, 47].   Prior to the dismissal of this charge, the Defendant filed a pro se "objection," [dkt. 673], and a motion to dismiss, [dkt. 763], relating to this charge.   The Court finds that both are now moot as the charge has been dismissed.

VIII.    <u>Speedy Trial [Dkt. 770]</u>

The Defendant filed a motion to assert his speedy trial rights. [Dkt. 770]. The Court denies the Defendant's motion as moot as the trial began on November 18, 2022 with the selection of the jury and evidence is scheduled to begin December 1, 2022.

IX.    <u>Conclusion</u>

As detailed above:

- The Defendant's motion in limine regarding prior acts, [dkt. 666], is denied.

- The Defendant's motion to produce agent notes, [dkt. 670], is denied as moot.

- The Defendant's motion to produce co-conspirator statements, [dkt. 671], is denied as moot.

- The Defendant's motion in limine regarding proffer reports, [dkt. 672], is denied as moot.

- The Defendant's motion in limine regarding the section 3142 jury charge, [dkt. 673], is denied as moot.

- The Governments motion to admit evidence of violence taken in furtherance of the charged conspiracy, [dkt. 675-3], is granted.

- The Government's motion to admit witness testimony and proffer reports, [dkt. 675-4], is withdrawn.

- The Government's motion regarding intent to preview proffer agreements in its opening statement, [dkt. 736], is granted.

15

- **The Defendant's motion to dismiss the section 3146 indictment, [dkt. 763], is denied as moot.**

- **The Defendant's motion for a speedy trial, [dkt. 770], is denied as moot.**

- **The Government's motion to withdraw the first joint trial memorandum, [dkt. 838], is granted.**

- **The Defendant's motion to adopt pre-trial motions, [dkt. 849], is granted.**

- **The Defendant's motion in limine regarding evidentiary issues, [dkt. 854], is denied with respect to the other crimes and bad acts evidence and denied without prejudice as to the remaining prophylactic evidentiary issues.**

**IT IS SO ORDERED.**

**_____/s/_____**
**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated this day in Hartford, Connecticut: November 29, 2022**

**16**